IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


ANTONIO FREEMAN            )
                                   )
     v.                       )      NO.  3:10-0071
                                   )
BOBBY HARRIS, et al.         )


TO:  Honorable Aleta A. Trauger, District Judge


## R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered February 10, 2010 (Docket Entry No. 7), this action was referred to the

Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend

disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further

proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local

Rules of Court.

Pursuant to the Order entered June 23, 2011 (Docket Entry No. 89), an evidentiary hearing

was held on January 12, 2012.  Set out below are the Court's findings of fact and recommendation

for disposition of the action.


## I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff is currently an inmate of the Tennessee Department of Correction ("TDOC")

who was  previously confined at the Sumner County Jail ("Jail") as a pre-trial detainee.  He brought

this action pro se and in forma pauperis on January 21, 2010, seeking damages under 42 U.S.C. §

1983 for alleged violations of his civil rights. Named as defendants are the Police Department of Gallatin, Tennessee ("GPD") and GPD Officer Bobby Harris ("Harris").

On November 21, 2008, a confidential informant who was working with Defendant Harris called the plaintiff and then entered an apartment in which the plaintiff was residing in an attempt to purchase cocaine from the plaintiff with marked currency. The informant was wearing a transmitting/recording device but the device ceased to function during the interaction and Defendant Harris made a forced entry into the apartment. Although the transaction did not occur and no cocaine was found, Defendant Harris arrested the plaintiff on two drug charges: 1) intent to sell a schedule II drug ("Intent Charge") based on the events of that day; and 2) possession of a schedule II drug for resale ("Possession Charge"), based on events of the prior day.

The plaintiff was transported to the Jail after his arrest and brought before a judicial commissioner who found probable cause for the charges and set a bond for the plaintiff. However, the plaintiff was unable to meet the bond and was detained at the Jail. The Intent Charge was dismissed after a preliminary hearing on January 21, 2009, but the plaintiff remained confined at the Jail on other state charges. In light of these events and the dismissal of the Intent Charge, the plaintiff alleges that he was falsely arrested on November 21, 2008, and falsely imprisoned in violation of his Fourth Amendment rights.[1] A jury trial has been demanded in the action. See Order entered April 12, 2011 (Docket Entry No. 84).

---

[1] By Order entered February 3, 2011 (Docket Entry No. 76), the Defendants' motion to dismiss (Docket Entry No. 25) was granted in part and denied in part and the Court dismissed with prejudice claims for an illegal search, excessive bail, and deprivation of property that had also been raised in the complaint.

## II. FACTUAL FINDINGS

At the evidentiary hearing, the plaintiff proceeded <u>pro se</u> and testified in support of his claims.[2]  The Defendants did not present witnesses or evidence at the hearing.  Based on the testimony presented at the hearing, the Court makes the following factual findings and notes relevant disputed facts.

On Thursday, November 20, 2008, the plaintiff was an occupant in an apartment that was leased to his brother and was part of an apartment complex at 478 S. Water Avenue, Gallatin, Tennessee.  Defendant Harris and fellow GPD Officer Eban Bates arrived at the apartment that evening and proceeded to enter and conduct a search of the apartment.  They did not have an arrest or search warrant at the time.  Once in the apartment, the officers produced marijuana, drug paraphernalia, and several grams of crack cocaine, which they purported to have found in the apartment, and Bates issued a misdemeanor citation to the plaintiff for simple possession of a Schedule VI drug (marijuana) and a misdemeanor citation for possession of drug paraphernalia.  The plaintiff was not arrested on November 20, 2008, nor were two other individuals –a woman named Renetta Black and the plaintiff's brother, Joseph Freeman – who were in the apartment at the time.  The plaintiff testified that he did not consent to a search of the apartment and that he did not possess or have any knowledge about the drugs or drug paraphernalia which the officers stated they found in the apartment.  He further testified that before the officers left, they attempted to convince him

---

[2] Upon the plaintiff's request, a witness subpoena was issued for Jakeisha Dowell, the woman alleged to have been in the apartment at the time the plaintiff was arrested.  <u>See</u> Docket Entry No. 160.  Although Ms. Dowell appeared at the undersigned's chambers on the day of the hearing, she appeared well after the hearing had concluded.

to provide them with information about other individuals and to help them "set up" an individual named "Washington" on drug charges.[3]

On the afternoon of Friday, November 21, 2008, the plaintiff was again in his brother's apartment, this time with a woman named Jakeisha Dowell. As some point that afternoon, an individual named John or Jonathan F. Kennedy called the plaintiff and later came to the apartment to meet with the plaintiff. Kennedy, who was working as a confidential informant for Harris at the time, had been fitted with a listening/recording device and Harris had given him $190.00 in marked currency. After Kennedy had been in the apartment for a short period of time, Harris made a forced entry into the apartment and subsequently arrested the plaintiff. At the time of the arrest, Harris had neither a warrant to search the apartment nor a warrant to arrest the plaintiff. After the arrest, the plaintiff was taken to the Jail where Harris swore out two Affidavits of Complaint for criminal charges against the plaintiff and presented them to a judicial commissioner.

The first charge was for "Intent to Sell Sch II - To Wit 'Crack Cocaine'" based on the events of November 21, 2008. The affidavit for this charge read as follows:

> On 11/21/2008, your Affiant conducted a controlled buy operation that resulted in the above defendant arranging and intending to sell crack cocaine to a Confidential Informant. Your Affiant met with a CI that stated he/she could purchase crack cocaine form (sic) Antonie Freeman, "Tom Tom." Said CI than (sic) made several phone calls to Freeman, and used speaker phone so that your Affiant could hear the conversations. Your Affiant was able to hear conversations between Freeman and the CI concerning Freeman selling the CI an "8 ball" of crack cocaine to the CI. This transaction was to cost the CI $190. Your Affiant further made a recorded call to

---

[3] Although the plaintiff testified to facts surrounding the events of November 20, 2008, because they are intertwined with the events of November 21, 2008, the plaintiff's claims set out in the complaint in this action involve only the plaintiff's arrest on November 21, 2008. The plaintiff brought claims arising from the events of November 20, 2008, in another action he filed in this District, <u>Freeman v. Lassiter</u>, No. 3:10-1087. However, that action was dismissed with prejudice by Order entered December 5, 2011. <u>See</u> Docket Entry No. 67, in Case No. 3:10-1087.

Freeman which consisted of similar conversation, except that Freeman instructed the CI to come to Freemans (sic) apartment, 478 S Water Apt. 3, Gallatin, TN. Your Affiant then searched said CI, and CIs (sic) vehicle. Said search did not reveal the presence of any contraband or U.S. Currency. R/I then equipped said CI with a police consensual listening device, which was used to monitor and record the transaction. Your affiant then followed the CI to 478 S Water, Apt 3, arriving at 14:15. Your Affiant then observed the CI exit his/her vehicle, and walk towards apartment 3, making contact with Freeman at approx 14:16. There was conversation between Freeman and the CI concerning the length of time it took for the CI to arrive. Freeman told the CI to empty his pockets, and began to search the CI. Your Affiant could hear conversation concerning the police consensual listening device, and what sounded to be light (sic) a struggle. During the time, the audio transmission was lost, and Your Affiant feared for the CIs (sic) safety. Your Affiant then made forced entry into apartment #3, and secured all parties there in. Once secured, your affiant was then able to recover the prerecorded currency which had been given to the CI by your Affiant. This currency was located in the possession of Freeman.

<u>See</u> Attachment to Complaint, Docket Entry No. 1, at 6.

The second charge was for "Possession of Sch II for Resale To Wit Crack Cocaine" based on the events of November 20, 2008. The affidavit for this charge read as follows:

On Thursday, 11/20/08, your Affiant, Inv. Bobby Harris along with Inv. Eben Bates of the Gallatin Police Department, did conduct a knock and talk at 478 S Water Ave #3, Gallatin, Sumner County TN. Contact was made with the Defendant, Antione L. Freeman, at the door of the apartment where marijuana was observed in plain view lying on a table in the living room. Consent to search the apartment was given by the Defendant, as well as the Defendant's brother, Joseph Freeman (Joseph is on the lease as the renter of the apartment but Antione lives there). During the search several amounts of paraphernalia were located including plastic sandwich baggie (corner bags) and digital scales. 4.3 grams of crack cocaine was found inside the apartment hidden along with another set of digital scales.

<u>See</u> Docket Entry No. 55-1, at 8.

The judicial commissioner found probable cause to believe that the plaintiff had committed the two offenses and set a $50,000.00 composite bond. The plaintiff was unable to meet the bond and remained at the Jail as a pretrial detainee. After a preliminary hearing on January 21, 2009, the charge of intent to sell a Schedule II drug was dismissed. The plaintiff proceeded to trial on the three

5

charges arising from the events of November 20, 2008, - possession of Schedule II drug for resale, possession of Schedule VI drug, and possession of drug paraphernalia - and was acquitted on those charges. See Docket Entry No. 159, at 61-64. The plaintiff's current incarceration within the TDOC is for a conviction that is unrelated to the facts of the instant action.

The plaintiff testified that he did not attempt to sell the informant any drugs and had not had any telephone conversations with him about the purchase of drugs. He testified that, on November 21, 2008, he offered to sell the informant a used radio, both on the telephone and when the informant came into the apartment, and that the informant placed $190.00 in the bathroom where the plaintiff was shaving. The plaintiff denied struggling with the informant in any way and stated that Harris suddenly entered the apartment with his guns drawn and arrested him. He testified that after being taken to the Jail, Harris again attempted to coerce him into working for and providing information to the police but that the plaintiff again refused to assist Harris.

There was no evidence presented concerning any type of municipal policy of the GPD.

### III. CONCLUSIONS

The purpose of the evidentiary hearing is to inquire into the factual basis of the plaintiff's claim. Johnson v. Bi-State Justice Ctr., 12 F.3d 133, 135-36 (8th Cir. 1993). The Court finds that, even when the disputed facts and all inferences are construed in the plaintiff's favor, the evidence in support of his claims is insufficient to warrant submitting the claims against the Gallatin Police Department to a jury because no reasonable jury could find in favor of the plaintiff on these claims. However, the Court finds that genuine issues of material fact exist with respect to the claims brought against Defendant Harris which must be resolved by the jury.

## A. Defendant GPD

The plaintiff's claim against Defendant GPD lacks evidentiary support and warrants dismissal. The GPD cannot be held liable under Section 1983 based upon a theory of <u>respondeat superior</u> merely because Defendant Harris is an employee of the GPD. Liability against the GPD must be based upon a showing of municipal liability in accordance with <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiff did not present any evidence or argument at the evidentiary hearing supporting a municipal liability claim against the GPD, and the record does not otherwise contain evidentiary support for such a claim. There is no basis upon which any reasonable jury could find liability against the GPD, and this defendant should be dismissed from the action.

## B. Defendant Harris

The plaintiff contends that his arrest by Defendant Harris on November 21, 2008, and his subsequent imprisonment violated his Fourth Amendment rights. Under 42 U.S.C. § 1983, an individual may bring a private right of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes. <u>Blessing v. Freestone</u>, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); <u>Maine v. Thiboutot</u>, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

The Fourth Amendment's prohibition against the unreasonable seizure of a person requires that an arrest be supported by probable cause. <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004); <u>Brooks v. Rothe</u>, 577 F.3d 701, 706 (6th Cir. 2009); <u>Lyons v. City of Xenia</u>, 417 F.3d 565, 573 (6th Cir. 2005); <u>Ingram v. City of Columbus</u>, 185 F.3d 579, 593-94 (6th

Cir. 1999). In order for the plaintiff to succeed on his wrongful arrest claim, he must prove that Defendant Harris lacked probable cause to arrest him. Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002). See also Brooks, 577 F.3d at 706. Contrary to the plaintiff's belief, however, the fact that the charges against him were ultimately dismissed does not itself satisfy this burden. "The Constitution does not guarantee that only the guilty will be arrested," Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and an arrest is not rendered constitutionally invalid because the criminal charge at issue is either not prosecuted or is dismissed as the result of subsequent criminal proceedings. See William v. Cambridge Bd. Of Educ., 370 F.3d 630, 638 (6th Cir. 2004); Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988). See also Manley v. Paramount's Kings Island, 299 Fed. Appx. 524, 530 (6th Cir. Nov. 3, 2008) ("the law is clear: an arrest grounded in probable cause does not become invalid simply because the charges are later dropped or the defendant is acquitted").

Probable cause to arrest exists when "the facts and circumstances within the officer's knowledge are sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); Hoover v. Walsh, 682 F.3d 481, 491 (6th Cir. 2012); Logsdon v. Hains, 492 F.3d 334, 341 (6th Cir. 2007). The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152-53, 125 S.C. 588, 160 L.Ed.2d 537 (2004), and not with "the 20/20 vision of hindsight." Radvansky v. City of Olmsted Falls, 496 F.3d 609, 615 (6th Cir. 2007). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead

a reasonable officer to conclude that the arrestee has committed or is committing a crime." <u>Harris v. Bornhorst</u>, 513 F.3d 503, 511 (6th Cir. 2008), <u>cert</u>. <u>denied</u>, 554 U.S. 903, 128 S.Ct. 2938, 171 L.Ed.2d 865 (2008).

Defendant Harris did not testify at the evidentiary hearing or present any evidence. The only evidence before the Court of the facts and circumstances upon which Defendant Harris relied at the time of the plaintiff's arrest is the Affidavit of Complaint that Harris completed on the night of the arrest. In this Affidavit, Defendant Harris states that: 1) a confidential informant told Harris that the informant could purchase cocaine from the plaintiff; 2) telephone conversations took place between the informant and the plaintiff about the sale of cocaine for $190.00, which Harris overheard because the call was placed on a speaker phone; 3) Harris recorded a conversation between the plaintiff and the informant in which the two men discussed the sale of cocaine; 4) Harris sent the informant into the apartment equipped with an audio transmission device and with $190 in prerecorded currency; 5) Harris heard what sounded like a struggle between the plaintiff and the informant prior to the audio device ceasing to function; and 6) the prerecorded currency was found in the possession of the plaintiff after Harris entered the apartment. <u>See</u> Attachment to Complaint, Docket Entry No. 1, at 6. It is these alleged facts and circumstances from which Defendant Harris concluded that there was probable cause to believe that the plaintiff had engaged in or was attempting to engage in the criminal activity of attempting to sell crack cocaine.[4]

---

[4] The criminal charge contested by the plaintiff in this action was lodged by Defendant Harris as the charge of "Intent to Sell Sch II Drug - To Wit 'Crack Cocaine'". However, the written charge does not refer to a specific statutory citation. Although Tennessee Code Ann. § 39-17-417(a)(4) makes it an offense to "knowingly possess a controlled substance with the intent to . . sell the controlled substance," the Tennessee Code does not contain an actual crime of "intent to sell" a controlled substance. Nonetheless, Tennessee Code Ann. § 39-17-417(a)(3) states that "it is an offense for a defendant to knowingly . . . sell a controlled substance," and Tennessee Code Ann.

In addition to the Affidavit of Complaint, however, the Court also has before it the sworn testimony of the plaintiff as presented at the evidentiary hearing. This testimony, which must be given credence at this stage of the proceedings, presents a version of events that is markedly different than the events set out in the Affidavit of Complaint. The plaintiff denies having telephone conversations with the confidential informant about selling cocaine as stated in the Affidavit of Complaint, denies selling or attempting to sell the confidential informant cocaine, denies that he was given the $190 in marked currency in exchange for cocaine, and denies that he was actually in possession of the $190 in marked currency when Harris entered the apartment. The plaintiff asserts that his interactions with the informant were only related to the sale of a radio. Thus, disputed issues of fact exist about whether Defendant Harris overheard and recorded conversations between the plaintiff and the confidential informant concerning the plaintiff's sale of cocaine to the informant for the amount of $190.00 and about the nature of the interactions between the plaintiff and the informant on November 21, 2008.

The Court also must note that there is no evidence before the Court showing that an exchange of cocaine or any other substance occurred or was attempted between the plaintiff and the confidential informant on November 21, 2008, and no evidence that cocaine or any other substance was found on the plaintiff, the confidential informant, or Ms. Dowell, or was found anywhere in the apartment after Defendant Harris entered the apartment.

In general, the existence of probable cause in a Section 1983 action presents a jury question, unless there is only one reasonable determination possible. Crockett v. Cumberland Coll., 316 F.3d

§ 39-12-101(a) penalizes the attempt of a criminal offense. Accordingly, it appears to the Court that the correct, technical charge should have written as the attempted sale of a Schedule II Drug.

571, 581 (6th Cir. 2003); <u>Gardenhire v. Schubert</u>, 205 F.3d 303, 315 (6th Cir. 2000); <u>Yancey v. Carroll Cnty.</u>, 876 F.2d 1238, 1243 (6th Cir.1989). Given the evidence before the Court as set out herein, the Court finds that there is not only one reasonable determination that can be made based on this evidence. Disputed issues of fact exist and credibility determinations must be made in order to determine whether probable cause existed for the plaintiff's arrest. If the plaintiff's version of the facts were believed, a reasonable jury could find that there was not probable cause to arrest the plaintiff. Accordingly, Defendant Harris is not entitled to summary judgment in his favor on the merits.

In addition to his direct challenge on the merits, Defendant Harris asserts that he is entitled to qualified immunity from any liability for damages. <u>See</u> Defendants' Pre-Hearing Memorandum (Docket Entry No. 150), at 4-6. The familiar inquiry for the affirmative defense[5] of qualified immunity consists of two steps: Under the facts alleged or shown by the plaintiff, is there evidence that (1) the defendant violated the plaintiff's constitutional rights; and (2) if so, was the right clearly established at the time. <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Courts need not undertake the analysis in that order. 555 U.S. at 236. An answer of "yes" to both questions defeats qualified immunity, while an answer of "no" to either question results in a grant of qualified immunity. Regarding claims of false arrest, "[A]n arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." <u>Harris</u>, 513 F.3d at 511.

---

[5] Defendant Harris raised the qualified immunity defense in his answer. <u>See</u> Docket Entry No. 83, at 3, ¶ 9.

Initially, it is beyond question that the right to not be arrested except upon probable cause was clearly established at the time of the plaintiff's arrest. See Everson v. Leis, 556 F.3d 484, 500 (6th Cir.2009); Donovan v. Thames, 105 F.3d 291, 297-98 (6th Cir. 1997). Accordingly, the question becomes whether Defendant Harris could have reasonably believed that the plaintiff's arrest was supported by probable cause and was, thus, lawful. Given, the Court's finding that genuine issues of material fact exist regarding the underlying facts of this case as they relate to the issue of probable cause, this question cannot be affirmatively answered. In such a situation, granting qualified immunity to a defendant is not warranted and the case must proceed to the trier of fact. See Johnson v. Jones, 515 U.S. 304, 313–15, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); Parson v. City of Pontiac, 533 F.3d 492, 504 (6th Cir. 2008); Painter v. Robertson, 185 F.3d 557, 567 (6th Cir. 1999).

## RECOMMENDATION

Based on the foregoing, the Court recommends that:

1) the plaintiff's Fourth Amendment claims for false arrest and false imprisonment against Defendant Bobby Harris be SET FOR TRIAL; and

2) the plaintiff's claims against Defendant Police Department of Gallatin, Tennessee ("GPD") be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.

See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET  GRIFFIN
United States Magistrate Judge